IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF ~~VIRGINIA~~

ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 04 2015

JULIA C. DUDLEY, CLERK
BY: S. Taylor
DEPUTY CLERK

CARL D. GORDON,
    Plaintiff,

v.

FRED SCHILLING, individually and in his official capacity as Health Services Director of the Virginia Department of Corrections; MARK AMMETTE, individually and in his official capacity as Chief Physician of the Virginia Department of Corrections,
    Defendants.

COMPLAINT
CIVIL ACTION
No.: 715CV00095

---

## I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Western District is the appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to these claims occurred.

## II. PLAINTIFF

3. I carl d. gordon, the plaintiff, am and was at all times mentioned herein, a prisoner of the State of Virginia in the custody of the Virginia Department of Corrections. I am currently housed at Wallens Ridge State Prison.

## III. DEFENDANTS

4. Each defendant is sued individually and in their official capacity. At all times mentioned in this Complaint, each defendant acted under the color of state law.

## IV. FACTS

Plaintiff, proceeding in propria persona states as follows:

5. On March 20, 2008, while housed at RedOnion State Prison (ROSP), Dr. H. E. Smith informed me that my February 2008 blood test results showed that I have hepatitis C (HCV), and added my name to the chronic care list for HCV, stamping "MD CHRONIC CARE CLINIC" on my medical chart under the "3-20-08" entry.

6. Being on the chronic care list meant that I had liver function tests (LFT's) done every six months, and received a physical and doctor visit every six months. See nurse response, attached exhibit 1.

7. In the seven years since Dr. Smith informed me I have HCV, no doctor has said anything to me about even the possibility of starting HCV treatment, and kept telling me the LFT's and doctor visits were to "monitor" me.

8. In 2011 the policy changed to one chronic care doctor visit annually, and LFT's being done only once a year. Though no doctor has seen me regarding HCV since I have been at Wallens Ridge State Prison (WRSP), where I was transferred to on May 4, 2012.

9. When chronic care checkups were reduced to one annually, I submitted grievance #ROSP-11-REG-00-711 (#00711), stating in part:

"[S]eeing me only once a year won't provide the [Nurse Practitioner] the opportunity to determine whether LFT's are 'necessary' or my viral load should be checked. Moreover, according to hepatologist Dr. Sanjiv Chopra, and the Centers for Disease Control and Prevention, my liver enzyme level should be checked **several** times a year. Therefore, I must continue to be given my chronic care

3.

check-up twice a year so that the progression of
my disease can be properly and regularly monit-
ored with LFTs so that ~~treatment~~ can begin
before it is too late and futile. This **cannot** be
done by giving me my chronic care check-up
only once a year."

10. The Level I Warden's Response considered that grie-
vance to be "**UNFOUNDED**", and I appealed the unfou-
nded decision to Level II, Mr. Fred Schilling,
Health Services Director. The Health Services Director
is the Office of Primary Responsibility for the entire
Virginia Department of Corrections (VDOC) regard-
ing all medical/health related policies and proce-
dures. It is therefore Mr. Schilling's duty to im-
plement, interpret and enforce all policies and pro-
cedures governing medical/health related issues.

11. Mr. Schilling's Level II Response to grievance # 00-
711, states:

"Based on the information provided and upon fur-
ther investigation, I concur with the Level I
response and have determined your grievance
**UNFOUNDED**. Be advised that the ROSP provid-
ers have the autonomy to monitor your
chronic medical condition as your clinical
needs change. It is important that you foll-
ow the recommendations of the medical

staff regarding your treatment plan. Furthermore, the ROSP Medical staff is comprised of licensed health care professionals who are qualified to provide medical services to you.

If you continue to experience health issues, please resubmit a sick call request for further evaluation of your medical needs and treatment plan."

(Emphasis in original).

12. Mr. Schilling's reference to my "treatment plan" was solely to purposefully and maliciously mislead me into believing I would receive treatment for my HCV infection per se. When in fact Mr. Schilling knew there was no plan to treat my HCV infection because I am eligible for parole once a year, though my mandatory release date is not until October 10, 2028.

13. On April 25, 2013, I submitted grievance #WRSP-13-REG-00365 (#00365), stating in part:

"Medical refuses to have the doctor see me for the chronic care checkup I have not received since 2011, so that I cannot receive the blood pressure reading I'm entitled to receive free of charge during my chronic care doctor visit. .. Medical knows I should have received a chronic

Enclosed:

Carl D. Gordon v. Fred Schilling, et al.

Complaint pages 6 — 20.

carl d. gordon

care checkup by the doctor last year but is deliberately indifferent to my serious medical condition."

14. Level I Response #00365 stated incorrect information under "Investigation", and considered the grievance "to be UNFOUNDED." Which I appealed to Level II, Mr. Fred Schilling, who also deemed it to be "UNFOUNDED", stating in part:

"It is reported by Nurse Stanford that you are chronic care for the management of your Hepatitis infection. However, you are subject to a co-pay charge when you request medical services unless you have a follow up appointment scheduled by the healthcare staff. This issue is governed by OP 720.4."

See attached Exhibit 2.

15. Mr. Schilling knew that policy required me to receive a chronic care checkup once a year, and that during the checkup my vital signs/blood pressure is checked free of charge. Chronic care doctor visits/checkups are free of charge and I received at least one a year from the year of my HCV diagnosis, 2008, until 2011, the last time I received a free chronic care doctor visit/checkup regarding my HCV disease.

16. Mr. Schilling's Level II Response to grievance

#00365, shows his deliberate indifference to my HCV disease. It was his duty to deem my grievance "founded" and instruct WRSP Medical Staff to provide me the annual chronic care doctor visit/checkup that my HCV infection entitles me to per VDOC policy.

17. On October 27, 2013, I submitted grievance WRSP# 13-REG-00808 (#00808), stating:

"Nurse Stanford does not deny that other prisoners at WRSP have been provided free chronic care doctor visits in 2013, such as Richard Brady #1129263, who says he has Hepatitis C. Richard Brady says that during his free chronic care doctor checkup the doctor questioned him as to whether he experienced any symptoms of his disease. Which discriminates against be [sic] by not being shown the same consideration by Dr. Miller. I have been on chronic care since 2008 but have not received the annual chronic care doctor visit Operating Procedure 720.2 entitles me to, since 2011, even though last year WRSP Medical Dept. said I would receive it. Richard Brady is a white prisoner and I am black. Providing Brady the free chronic care

doctor visit he is entitled to annually while re-
peatedly denying me mines is raced based disc-
rimination because no legitimate reason has
been offered as to why Brady and others re-
ceived their chronic care checkups, but I
haven't."

18. Level I Warden's Response #00808 states in part
that I was "[a]dded to HCV list" in May 2012, and
that I "need[ed] to submit a request for medical
services if [I] need to be seen by medical staff."
See attached Exhibit 3. Which completely ignored
that being "[a]dded to HCV list" means the
**chronic care** list that **entitles** me to an annual
doctor visit and physical.

19. Level I Response #00808 does not deny that
other prisoners at WRSP received free HCV
chronic care doctor visits/checkups in 2013.
See Exh. 3. I appealed the Level I Response to
Level II, Mr. Fred Schilling, who also "determined
[the] grievance [to be] UNFOUNDED." See
attached Exhibit 4. Which upheld racial discrimination.

20. Mr. Schilling also stated, "You do not have
a chronic care diagnosis that VADOC recognizes
at this time for chronic care. Hep C is not a
chronic care clinic at this time." Exh. 4. Which
shows Mr. Schilling's clear intent to deprive me of

all levels of HCV care and ~~treatment~~. Evidenced by the fact that Mr. Schilling expressly contradicted his responses to grievances #00711 and #00365.

21. In his response to grievance #00365, Mr. Schilling stated that according to Nurse Stanford I am "chronic care for the management of [my] Hepatitis infection". Exh. 2. Mr. Schilling did not contradict Nurse Stanford's assertion that I am on chronic care for HCV, and clearly agreed that I am.

22. Mr. Schilling's response to grievance #00711, states, "You want a chronic care check up twice a year", for my "Hepatitis C"; and goes on to state, "Be advised that the ROSP Providers have the autonomy to monitor your chronic medical condition", all of which clearly means I am chronic care/on chronic care for HCV, a chronic care diagnosis. See attached Exhibit 5.

23. Mr. Schilling's claims in his response to grievance #00808, that I "do not have a chronic care diagnosis that VADOC recognizes at this time for chronic care", and "Hep C is not a chronic care clinic at this time", are intentional false statements for the sole purpose of denying me all levels of HCV care and treatment. Which is an abuse and misuse of Mr. Schilling's power as Health

7.

Services Director of the VDOC. Cf Exhibits 2, 4, 5.

24. On June 6, 2013, I had submitted grievance #WRSP-13-REG-00476 (#00476), complaining of being denied the "written protocols/guidelines for when HCV treatment should begin", stating further that "I must be provided a copy of the written guidelines and criteria for determining when treatment for HCV should begin."

25. Level I Warden's Response #00476 states in part, "You were added to Hepatitis C Chronic Care", and, "No written protocol/criteria or guidelines will be provided to you." Level I deemed grievance #00476 "to be UNFOUNDED."

26. I appealed Level I Response #00476 to Level II, Mr. Fred Schilling, who did not in any way contradict Level I's statement that I was "added to Hepatitis C Chronic Care." See attached Exhibit 6.

27. Mr. Schilling determined grievance #00476 to be "UNFOUNDED", stating further:

"Dr. Miller is the WRSP medical authority responsible for your care and he will determine the course of your hepatitis treatment based on your past history and current medical status. The VADOC hepatitis guidelines are restricted operating procedures; therefore,

offenders are not allowed access to these procedures. This issue is governed by **restricted policy**."

Exhibit 6.

28. Mr. Schilling's response to grievance #00476, clearly agrees with Level I that I was/am on chronic care for HCV as of July 29, 2013, which shows that his statements on January 14, 2014, that I "do not have a chronic care diagnosis that VADOC recognizes", and that "Hep C is not a chronic care clinic", were fabrications to justify denying me care and treatment for my HCV disease. Cf. Exhibits 4 and 6.

29. Mr. Schillings response (Exh. 6), regarding "the course of [my] hepatitis treatment," was again solely to mislead me into believing that I will receive curative treatment for my HCV disease.

30. Mr. Schilling knew that the Hepatitis C standard Treatment Guidelines (HCV Guidelines) that he himself implemented and enforce, **prevents** me from receiving treatment that can eradicate my HCV disease, **solely** because I have a parole eligibility date once a year. Which is cruel and unusual punishment and serves no rational, legitimate penological objective.

31. The HCV Guidelines do not contain anything related to any aspect of security, and are restricted from prisoners review solely to prevent all prisoners who entered the VDOC before parole was abolished in 1995 or '96, from discovering that we will be and/or are being, denied curative HCV treatment **only** because we are parole eligible once a year.

32. Which is a death sentence for many of us, or a guarantee of an unhealthy, poor quality of middle age and/or elderly life, solely for economic reasons: To save money for the VDOC's primary interests; building prisons, establishing enterprises, and making multimillion dollar purchases.

33. Prisoners entering the VDOC after a certain date in 1995-'96, are not eligible for parole, but are therefore eligible for HCV treatment, per the HCV Guidelines.

34. Which means that, prisoners entering the VDOC after 1995-'96, with life sentences and 100 or more years, can receive curative HCV treatment to save or prolong their lives, even though they will never be released from prison, while those of us sentenced before 1995, who **are** returning to free society, must return with HCV infections, posing a serious risk to the health and safety of members of free society.

35. Which is not only irrational, but is malicious and disregards not only my health, life, and safety, but more importantly, disregards the health, life and safety of law abiding citizens in free society who trusts their government to protect them.

36. Purposefully releasing HCV infected prisoners into society instead of curing all of us that are susceptible to curative treatment, is akin to terrorism, but at the very least shows deliberate indifference to the health and lives of every citizen in free society.

37. Because the HCV Guidelines do not concern any aspect of security, the State of Virginia, in Carl D. Gordon v. Commonwealth of Virginia, Case No. CL11-30, did not object to my discovery request for the HCV Guidelines, which I received on December 22, 2014. See attached Exhibit 7.

38. It was therefore on December 22, 2014, that I discovered that I have been denied HCV treatment for seven years solely because I am annually eligible for parole, even though my mandatory release date is not until October 10, 2028

39. On January 11, 2015, I submitted grievance # WRSP-14-REG-00015 (#00015), stating:

"The **medical criteria** listed under SCREENING, of the Hepatitis C Standard Treatment Guidelines (STG) that were in effect until recently, shows that I was entitled to receive

treatment at the time of my diagnosis in 2008 and when I arrived at WRSP in May 2012, and throughout 2013. However, I was denied HCV treatment at Wallens Ridge State Prison in 2012 and 2013 solely because under **Treatment Inclusion Criteria** is stated: 'Inmate is not parole eligible and must have greater than 24 months remaining to serve after liver biopsy prior to earliest release date'. I am eligible for parole once each year though I declined all hearings since 2002. I have been denied HCV treatment since 2008 solely because I am eligible for parole once a year, even though the entire time I met the medical criteria for HCV treatment under the former Hepatitis C STG. Denying me HCV treatment I was entitled to receive under the STG **medical criteria**, unnecessarily allowed my liver to potentially deteriorate much more than it needed to."

See Exh. 7 page 3, Treatment Inclusion Criteria(1).

40. On October 1, 2014, the Medical Director at WRSP, Ms. M. Stanford, had informed me that the HCV Guidelines were "in the process of being re-written" by the Chief Physician at the Health Services Unit in Richmond", Dr. Mark Ammette.

41. Level I Response #00015 did not dis-

pute my complaint that the **medical** criteria of the former HCV Guidelines (Exh. 7) entitled me to receive HCV treatment for the past seven years, or that I was denied the treatment solely because I am annually eligible for parole.

42. The Level I Response states that, as of "(1/20/15), the VADOC Health Services Unit has not issued guidelines for the treatment of HCV. Treatment provided at WRSP must be authorized by the Health Services Unit." See attached Exhibit 8, Which refers to the guidelines that are being rewritten; and the "Health Services Unit" means Mr. Schilling and Dr. Ammette. The grievance was deemed "**UNFOUNDED.**"

43. On February 13, 2015, Mr. Schilling's Level II Response also deemed grievance #00015 to be unfounded, and stated:

> "As you have been advised, the HCV guidelines are pending. Meanwhile, the WRSP medical department will continue to evaluate, monitor, and provide you with the medical care as your hepatitis condition dictates. This issue is governed by **restricted** policy."

See attached Exhibit 9.

44. Mr. Schilling's response simply paid lip service to the evaluations and medical care that he knew I have not received and will not receive, solely because I have an annual parole eligibility date. Moreover, when his Level II

Response declared that I "do not have a chronic care diagnosis", and that "Hep C is not a chronic care clinic", Mr. Schilling **ensured** that I will not receive any HCV care and evaluation other than having my blood drawn once a year for LFT's. See Exh. 4.

45. Which deprives me of the physicals that even those of us excluded from HCV treatment are entitled to an chronic care, according to the HCV Guidelines. See Exh. 7, p. 4, III (A). But as stated above, I have not had a physical since 2011, and no doctor has discussed my condition with me since 2011.

46. The most essential evaluation to be made after a HCV diagnosis, is to determine whether there has been a histological change in the liver such as fibrosis or cirrhosis, **and** the most accurate way to diagnose fibrosis or cirrhosis, is through a liver biopsy. Which I have never had done because I am excluded from treatment due to my annual parole eligibility date. See Exh. 7 Page 3.

47. According to Dr. Sanjiv Chopra's Liver Book, fibrosis can be reversed with interferon therapy, which is used by the VDOC to eradicate HCV. The final stage of fibrosis is cirrhosis. Cirrhosis is the twelfth leading cause of death in the United States. Eliminate liver fibrosis and there can be no cirrhosis.

48. Refusing to biopsy my liver for the seven

years that has passed since my HCV diagnosis, may be causing me to develope cirrhosis that I might did not have at the time of my diagnosis, though fibrosis may have been present in my liver and could have been reversed or eliminated by pegylated interferon and ribavirin therapy for six months.

49. The HCV Guidelines require interferon and ribavirin therapy for only six months to treat HCV genotypes 2 and 3. See Exh. 7 page . The Centers for Disease Control and Prevention (CDC) agrees that "[f]or patients with genotypes 2 and 3, a 24-week course of combination [alpha interferon and ribavirin] treatment is adequate, whereas for patients with genotype 1, a 48-week course is recommended". And Dr. Sanjiv Chopra agrees with the CDC, limiting interferon treatment to one year max regardless of the HCV genotype.

50. Therefore, regardless of the genotype of HCV I have, my once a year parole eligibility would not in any way interfere with the full course of standard treatment used to eradicate HCV, in the VDOC and in society at large, even if I did make parole, if the treatment is begun after I am denied parole, even if the treatment requires a year. Plus, I could always get a six month parole deferral if necessary, as I did in 1987, pending the outcome of an upcoming trial a few months after the 1987 parole hearing.

51. There is therefore no rational basis for ex-

cluding me or any other prisoner from receiving in-
terferon therapy because we have one parole hearing
a year, and no legitimate penological objective is
served in doing so. The sole reason for this insidious
policy is a purely economical one, for the advancem-
ent of the VDOC's economic interests, at the expen-
se of my health and possibly my life.

52. The policy of denying me curative HCV treatment
because I am eligible for parole, is unconstitutional
in itself in all situations, and especially as applied
to me, because I do not discharge from the VDOC
until October 2028.

53. Dr. Mark Ammette wrote the HCV Guidelines, and
Mr. Fred Schilling implemented and enforces them. The-
refore, Dr. Ammette and Mr. Schilling are both liable
for the policy provision that prevented me from re-
ceiving HCV treatment for the past seven years
because I am annually eligible for parole, and are
both deliberately indifferent to the extreme risk
of serious harm posed to my health and life by
denying me HCV treatment from 2008 until I
am released from prison in October 2028.

54. Moreover, as the Level I grievance response
stated, "Treatment provided at WRSP must be
authorized by the Health Services Unit." Exh. 8.
Which is Dr. Ammette and Mr. Schilling.

## V. LEGAL CLAIMS

55. The acts, inactions, and omissions described
above, constitutes deliberate indifference in violation

of the Eighth Amendment to the U.S. Constitution, and deprives me of liberty interests and of equal protection, in violation of the Due Process and Equal Protection clauses of the Fourteenth Amendment.

56. I have no plain, adequate or complete remedy at law to redress all of the wrongs described herein.

WHEREFORE, I respectfully pray that this Honorable Court enter judgment granting me:

57. A declaration that the acts and omissions described herein violated my rights under the Constitution and laws of the United States, and continues to violate them; and a declaration that, as long as I have HCV, I am entitled to review any and all HCV Guidelines and VDOC policies which pertain to the medical aspects of treating HCV infected prisoners.

58. A permanent injunction enjoining Dr. Mark Ammette and Mr. Fred Schilling, and their successors, from denying me HCV treatment and care of any kind because I am eligible for a parole hearing once a year.

54. Compensatory damages from Defendant Mark Ammette in the amount of one-hundred and fifty-thousand dollars ($150,000), and compensatory damages from Defendant Fred Schilling in the amount of one-hundred and fifty-thousand dollars ($150,000).

60. Punitive damages from Defendant Mark Amme-tte in the amount of five-hundred thousand dollars ($500,000), and punitive damages in the amount of five-hundred thousand dollars ($500,000) from Defendant Fred Schilling.

61. A jury trial on all issues triable by a jury.

62. My costs in this suit, including any assessed against me, and all legal loan postage advance me regardin this action. Plus, any other relief the Court deems just, proper, and equitable,

Respectfully submitted

By *carl d. gordon*

carl d. gordon #1014456
Wallens Ridge State Prison
POB 759
Big Stone Gap, VA 24219


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing civil Rights complaint is true and correct to the best of my knowledge, belief and understanding. Executed at Big Stone Gap, Virginia, on February 24, 2015.

By *carl d. gordon*

20.